## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| Carllnitra Gorman<br><br>And<br><br>Amanda Thorneycroft,<br><br>    Plaintiffs,<br><br>v.<br><br>Robert Crane & Associates, LLC,<br><br>    Defendant. | Case No. 1: 20-cv-807<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

## **PARTIES**

1. Plaintiff, Carllnitra Gorman ("Nitra"), is a natural person who resided in Mason, Ohio, at all times relevant to this action.

2. Plaintiff, Amanda Thorneycroft ("Amanda"), is a natural person who resided in Muncie, Indiana, at all times relevant to this action.

3. Defendant, Robert Crane & Associates, LLC ("Collector Crane"), is an Indiana limited liability company that maintained its principal place of business in Anderson, Indiana, at all times relevant to this action.

## **JURISDICTION AND VENUE**

4. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

1

## STATEMENT OF FACTS

6. At all times relevant to this action, Collector Crane collected consumer debts.

7. Collector Crane regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of Collector Crane's revenue is debt collection.

9. Collector Crane is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, Collector Crane contacted Nitra to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Nitra and Amanda are "consumers" as defined by 15 U.S.C. § 1692a(3).

13. Collector Crane identifies collection files in his office by the term "Cause Number".

14. Although substantially similar to a "Case Number" a cause number is not indicative of litigation.

15. Consumers like Nitra and Amanda are unable to distinguish between a cause number and a case number.

16. Prior to the events set out in this lawsuit, Nitra and Amanda were strangers.

17. On information and belief, Collector Crane is attempting to collect distinct, unrelated debts allegedly owed by Nitra and Amanda.

18. On information and belief, within the past 12 months, Collector Crane's deficient policies and procedures regarding sending outgoing mail caused at least one letter disclosing the existance of a debt to be mailed to the wrong consumer.

19. In the Summer of 2020, Collector Crane mailed Nitra a letter ("Amanda Disclosure Letter"), to Nitra's residence in Ohio, with a cover page addressed to Nitra.

20. The second page of Amanda Disclosure Letter that Collector Crane mailed to Nitra contained the sensitive personal financial information of Amanda and demanded payment for Amanda's consumer debt.

21. Nitra initially believed that Collector Crane was alleging that Nitra was a co-obligor on Amanda's debt and became fearful of Collector Crane's demand for payment.

22. Upon further review, Nitra realized that the Amanda Disclosure Letter that Collector Crane mailed to Nitra was sent by Collector Crane in error.

23. Collector Crain mailed the Amanda Disclosure Letter across state lines, to Nitra in Ohio.

24. Concerned that Collector Crane had mailed a similar disclosure letter containing Nitra's personal information and disclosing Nitra's debt to Amanda, Nitra reached out to Amanda using social media.

25. When Nitra communicated with Amanda, Amanda became fearful that Nitra was in possession of her personal information.

26. When Nitra communicated with Amanda, Amanda was embarrassed that a stranger was aware of Collector Crane's allegations that Amanda owed a debt.

27. During their communications, Amanda was unable to confirm to Nitra that she received a Collection Letter intended for Nitra.

28. As a result, Nitra became terrified and panicked that an unknown party was in possession of Nitra's personal information.

29. Unable to obtain satisfactory information about the location of Collector Crane's letter to Nitra, Nitra placed a telephone call to Collector Crane.

30. On the telephone, an employee of Collector Crane ("Paralegal") acknowledged that letters were improperly addressed and acknowledged information alleging that Nitra owed a debt was mailed to an unknown third party.

31. At the time that Collector Crane mailed Nitra's personal information to a third party, Collector Crane already had Nitra's location information.

32. Shortly after Paralegal confirmed that Nitra's personal debt information was disclosed to a third party, Nitra received notification that her personal information had appeared on the Dark Web for sale.

33. Around the same time frame, embarassingly, Amanda also called Collector Crane's office and spoke with Paralegal.

34. Paralegal was unsympathetic to Collector Crane's disclosure of Amanda's debt to Nitra and explained that there was "nothing Amanda could do" because "the information was public record".

35. The FDCPA does not have an exception for debt collectors that dislclose debts that are public record.

36. There was "something" Amanda could do, evidenced by the filing of this lawsuit.

37. On or around September 10, 2020, Nitra retained an attorney to assist her with identity protection and to gain additional information as to who received the letter containing her personal information.

38. On or around September 23, 2020, Nitra's attorney reached out to Collector Crane on Collector Crane's website ("Online Notice") indicating that he represented "Nitra Gorman" regarding impermissible third party debt disclosures.

39. Additionally, on or around September 24, 2020, Nitra's attorney mailed notice of attorney representation ("Notice of Representation") to Collector Crane indicating that "Nitra Gorman" had retained counsel.

40. Collector Crane was aware that the Notice of Representation he received referencing Nitra Gorman was concerning Carllnitra Gorman.

41. In each and every communication Nitra has had with Collector Crane's office, she has introduced herself as "Nitra".

42. In each and every communication Nitra has had with Collector Crane's office, Collector Crane's office has addressed Nitra as "Nitra".

43. The Letter of Representation discussed the allegations raised in this lawsuit but inadvertently referred to Amanda Thorneycroft as Amanda Thronycroft.

44. Collector Crane was, or should have been, aware that the Notice of Representation referencing Amanda Thronycroft was concerning Amanda Thorneycroft.

45. In response to the Notice of Representation, on September 28, 2020, Robert Crane, Esq., writing on behalf of Collector Crane, mailed a letter to Nitra's attorney ("Threatening Letter)".

46. The Threatening Letter was a communication in connection with the collection of a debt.

47. In the Threatening Letter, Robert Crane, Esq. claimed that he was unable to locate anyone with accounts in his office named Nitra Gorman.

48. The Threatening Letter also proclaimed that Robert Crane, Esq. was unable to respond to the allegations in the Notice of Representation as Collector Crane couldn't find a single account in his office owed by "Amanda Thronycroft".

49. After claiming that he was unable to research *any* of the allegations raised in the Letter of Representation, Robert Crane, Esq. closed his threatening with, "Finally should you bring an FDCPA claim against my firm for these alleged allegations based on what you have outlined in your letter, not only will it be vigorously defended, but I will seek appropriate Rule 11 sanctions against your firm as well".

50. Despite receiving the Online Notice and the Notice of Representation, Collector Crane failed to update the file in his office belonging to Carllnitra Gorman as being represented by counsel.

51. On information and belief, despite receiving the Online Notice and the Notice of Representation, Collector Crane failed to update any accounts in his office as being represented by Nitra's counsel.

52. Nitra Gorman is substantially similar to the name Carllnitra Gorman.

53. On October 1, 2020, Nitra reached out to Collector Crane to obtain her "cause number".

54. It is Collector Crane's policy of using the term "Cause Number" as a filing system.

55. That filing system either intentionally or unintentionally misleads and confuses consumers as to whether Collector Crane has initiated legal action or not.

56. Despite having actual knowledge that Nitra was represented by counsel, Collector Crane's Paralegal communicated with Nitra in connection with the collection of a debt.

57. Paralegal informed Nitra that Robert Crane, Esq. wanted to speak with Nitra.

58. Nitra, again, provided notice that she was represented by counsel.

59. Despite Nitra mentioning she was represented by counsel, Paralegal never requested Nitra's attorney's contact information.

60. It is Collector Crane's policy not to conduct a reasonable investigation when a consumer mentions having attorney representation.

61. It is Collector Crane's policy not to request the contact information of a consumer's attorney when a consumer indicates it is represented by counsel.

62. Collector Crane and Paralegal acted in accordance with Robert Crane and Associates, LLC's promulgated policies and procedures as to the notification of consumers retaining counsel.

63. Collector Crane's collection efforts, including but not limited to its mailed collection letters, internal filing system terminology and refusal to participate in a meaningful fact finding exercise to help alleviate the concerns of identity theft, caused Nitra and Amanda emotional distress in the form of frustration, annoyance, aggravation, and anxiety, fear and panic.

64. Collector Crane violated the Fair Debt Collection Practices Act.

## **COUNT ONE – (Nitra)**

### **Violation of the Fair Debt Collection Practices Act**

65. Nitra re-alleges and incorporates by reference Paragraphs 6 through 64 above as if fully set forth herein.

66. Collector Crane violated 15 U.S.C. § 1692c(a)(2) by communicating with Nitra notwithstanding knowledge that Nitra was represented by an attorney with respect to the debt.

## COUNT TWO – (Nitra)

### Violation of the Fair Debt Collection Practices Act

67. Nitra re-alleges and incorporates by reference Paragraphs 6 through 64 above as if fully set forth herein.

68. Collector Crane violated 15 U.S.C. § 1692c(b) by communicating with a third party in connection with the collection of the debt without Nitra's consent.

## COUNT THREE (Amanda)

### Violation of the Fair Debt Collection Practices Act

69. Amanda re-alleges and incorporates by reference Paragraphs 6 through 64 above as if fully set forth herein.

70. Collector Crane violated 15 U.S.C. § 1692c(b) by communicating with a third party in connection with the collection of the debt without Amanda's consent.

## COUNT FOUR (Nitra and Amanda)

### Violation of the Fair Debt Collection Practices Act

71. Nitra and Amanda re-allege and incorporate by reference Paragraphs 6 through 64 above as if fully set forth herein.

72. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

73. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or

conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

74. The likely effect of Collector Crane's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Nitra and Amanda.

75. Collector Crane violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Nitra and Amanda in connection with the collection of the debt.

## COUNT FIVE – (Nitra)

### Violation of the Fair Debt Collection Practices Act

76. Nitra re-alleges and incorporates by reference Paragraphs 6 through 64 above as if fully set forth herein.

77. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

78. Collector Crane's policies and procedures, as described in Paragraphs 13 through 63 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

79. Collector Crane's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

80. Because Collector Crane's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT SIX – (Nitra)

### Violation of the Fair Debt Collection Practices Act

81. Nitra re-alleges and incorporates by reference Paragraphs 6 through 64 above as if fully set forth herein.

82. Collector Crane violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## JURY DEMAND

83. Nitra and Amanda demand a trial by jury.

## PRAYER FOR RELIEF

84. Nitra and Amanda pray for the following relief:

    a. Judgment against Collector Crane for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. For such other legal and/or equitable relief as the Court deems appropriate.

                                                          RESPECTFULLY SUBMITTED,

Date: October 14, 2020                  By:    /s/ Jeffrey S. Hyslip
                                                         Jeffrey S. Hyslip, Esq. (0079315)
                                                         Hyslip Legal, LLC
                                                         1100 W. Cermak Rd., Suite 420
                                                         Chicago, IL  60608
                                                         Phone: 614-490-4224
                                                         jeffrey@hysliplegal.com

                                                         *Attorney for Plaintiff*